**Toni WILSON, Appellant,**

v.

**Ledger D. KAUFFMAN, Appellee.**

No. 20A04–8909–CV–398.

Court of Appeals of Indiana, Fourth District.

Nov. 26, 1990.

Rehearing Denied Jan. 18, 1991.

Charles C. Wicks, Elkhart, for appellant.

John D. Ulmer, Bryant C. Haney, Yoder, Ainlay, Ulmer & Buckingham, Goshen, for appellee.

MILLER, Presiding Judge.

Toni Wilson, Plaintiff-appellant, a black female, obtained a jury award of $10,000 for injuries she sustained when a car driven by Ricky Chapman was pushed into her car by Ledger Kauffman, Defendant-appellee. Wilson appeals the jury award in her favor, raising the following issues:

I. Whether the court erred in granting defendant's peremptory challenge to juror Pulluaim, who is black.

II. Whether the court erred in denying Wilson's request for a limiting instruction, instructing the jury that the medical report of Dr. Gupta, who did not testify at trial, was admissible only because it was used by Dr. Papadopoulos, whose videotaped deposition was shown at trial, in arriving at his opinion of Wilson's injuries and not for the truth of the matters asserted in the report.

III. Whether the jury verdict of $10,000 was inadequate.

We affirm.

### FACTS

The facts most favorable to the judgment are as follows:

On October 13, 1983, Toni Wilson (Wilson) was traveling north on Benham Avenue in Elkhart, Indiana, when she stopped behind a car that was stalled on the roadway. A car driven by Ricky Chapman stopped behind Wilson's car. Ledger Kauffman was also travelling north on Benham when he saw the Chapman vehicle stopped ahead of him. Kauffman was unable to stop his truck in time to avoid hitting Chapman's car. As a result of the impact between the Kauffman and Chapman vehicles, Chapman's car was forced into the back of Wilson's car.

On October 1, 1989, the court impaneled a jury which contained one black juror, Charlie Pulluaim. While Kauffman was questioning Pulluaim, the trial judge instructed Kauffman that if Pulluaim was excused, it would have to be for a racially neutral reason. After Kauffman decided to strike Pulluaim, the court asked Kauff-

man to submit his reasons for excusing Pulluaim in writing. Wilson was also permitted to submit her objection in writing, but the court found Chapman's reason for excusing juror Pulluaim to be racially neutral.

During trial, the videotaped deposition of Dr. Papadopoulos, one of Wilson's physicians, was shown to the jury. During his deposition, Dr. Papadopoulos stated that he considered a report prepared by Dr. Gupta, another of Wilson's physicians, in forming his opinion about Wilson's injuries. The report was offered into evidence by Kauffman and admitted over Wilson's objections. Wilson then requested an instruction to the jury that Dr. Gupta's report was offered not for the truth of the matters asserted in the report, but because it was used by Dr. Papadopoulos in arriving at his opinion. Her request was denied.

After the trial, the jury returned a verdict in favor of Wilson and granted her damages in the amount of $10,000.

## DECISION

### Issue I

The first issue raised by Wilson is whether the court erred in granting Kauffman's peremptory challenge of juror Pulluaim, the only black person on the venire. Wilson contends she was denied equal protection of the laws when the court permitted Kauffman to peremptorily strike Pulluaim. She cites *Batson v. Kentucky* (1986), 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69, to support her argument that, once she made a *prima facie* case of purposeful discrimination, the burden was on Kauffman to prove he was seeking to remove Pulluaim for a racially neutral reason, which he failed to do. Although Wilson recognizes that *Batson* is a criminal case, she argues it is nonetheless applicable to jury selection in civil cases.

Kauffman, on the other hand, argues that the holding in *Batson* is limited to jury selection in criminal cases. He asserts that in civil cases, only private actors are involved. Therefore, there is no state action,

which is required before a constitutional violation may be found. Alternatively, he argues that Wilson failed to meet her burden of proving purposeful discrimination as required by *Batson*. He also argues that Pulluaim was dismissed for a racially neutral reason.

■■■ Private use of state-sanctioned private remedies does not rise to the level of state action. *Tulsa Professional Collection Services v. Pope* (1988), 485 U.S. 478, 108 S.Ct. 1340, 99 L.Ed.2d 565. However, when private parties make use of state procedures with the overt, significant assistance of state officials, state action may be found. *Id.* In order for there to be state action, it must be determined that 1) the claimed deprivation has resulted from the exercise of a right or privilege having its source in governmental authority; and 2) there is some figure present in the action who can be fairly characterized as a state actor. *Lugar v. Edmondson Oil Co.* (1982), 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482.

■■ It is clear that the first requirement has been met. The claimed deprivation has resulted from a litigant's use of a statutorily [1] granted peremptory challenge. *Id.* However, the question of whether there is some figure who can be characterized as a state actor is more difficult to answer.

In a criminal case, the state actor is the prosecutor who exercises the peremptory challenge. *Batson, supra.* In civil cases, a private litigant exercises the challenge. The only other possible state actor, therefore, is the court. However, in *Edmonson v. Leesville Concrete Co., Inc.* (1990), 5th Cir., 895 F.2d 218, *cert. granted* (1990), —— U.S. ——, 111 S.Ct. 41, 112 L.Ed.2d 18, the court held that when the court allows a juror to be removed peremptorily, it is exercising a ministerial function of permitting venire member cut by counsel to depart. According to the *Edmonson* court, this purely ministerial action is too insignificant to be considered state action.

---

1. *See* Ind.Code 34–1–20.5–3.

In *Fludd v. Dykes* (1989), 11th Cir., 863 F.2d 822, *reh'g denied*, (1989), 873 F.2d 300, *cert. denied*, (1989), —— U.S. ——, 110 S.Ct. 201, 107 L.Ed.2d 154, the court reached the opposite result. That court held that when blacks are excluded from jury service because of their race, it is *the court* and not the attorney who is the actor. *Id.* The court reasoned:

"Thus, until the trial judge overrules a party's objection to the racial composition of the venire, the law treats any previous decision on the part of a state entity to discriminate as harmless, insofar as the objecting party is concerned. The trial judge's decision—to proceed to trial, over the party's objection, with a jury selected from the venire on the basis of race—is the one that harms the objecting party. In overruling the objection, which informed the court that the peremptory challenger may be excluding blacks from the venire on account of their race, the judge becomes guilty of the sort of discriminatory conduct that the equal protection clause proscribes. Because the trial judge constitutes the discriminatory state actor under the equal protection clause, we conclude that there is no constitutional bar to the application of *Batson* to a civil suit."

*Id.* at 828. The trial court judge is the state actor because it is the trial court judge who must decide whether to excuse a juror over an objection by a party that the juror is being excused because of race. Therefore, there is significant action on the part of the judge—a state actor—to sustain a constitutional challenge.

The conclusion reached in *Fludd* is consistent with the Supreme Court's holding in *Tulsa Professional Collection Services, supra,* where the Court was faced with a constitutional challenge to a nonclaim provision of Oklahoma's probate code which barred creditors' claims against an estate unless they are presented to the executor within two months of the publication of notice of the commencement of probate proceedings. Pope, the executrix of the

estate, argued that there was no state action because the nonclaim statute was merely a self-executing statute of limitations. The Court, however, found significant state action because of the involvement of the probate court: the probate court is intimately involved in the administration of the estate; the nonclaim statute becomes operative only after probate proceeding has been initiated; and the court appoints the executrix of the estate. *Id.*

Likewise, there is significant state involvement here. The court summons the venire, the right to the peremptory challenge is granted by statute and the statute is only significant once the legal proceedings have begun. More importantly, it is the judge who, when faced with a situation such as the one here, must decide whether there exists a racially neutral reason for excusing the juror.

Our Indiana constitution guarantees the right to trial by jury in civil cases. Art. 1 § 20. The selection of persons to be drawn as prospective jurors is the duty of the jury commissioners, who must select those persons "without favor or prejudice". IC 33–4–5–1. The selection process itself is governed by statute and is designed to be fair and impartial. *See* e.g. IC 33–4–5–2; IC 33–4–5–9. If a litigant were permitted to exercise peremptory challenges to strike jurors because of their race, these provisions would be rendered a nullity.

In summary, we agree with the *Fludd* court that there is state action involved in the jury selection process in a civil case and hold, consistent with other jurisdictions,[2] that *Batson* is applicable to jury selection in civil cases.

■ Under *Batson*, the litigant challenging the use of a peremptory challenge must establish a prima facie case of purposeful racial discrimination in the selection of the jury by showing that: 1) she is a member of a cognizable racial group; 2) the prosecution has used a peremptory challenge to remove from the venire members of the

2. *Clark v. City of Bridgeport* (1986), 645 F.Supp. 890; *Thomas v. Diversified Contractors* (1989), Ala., 551 So.2d 343; *Williams v. Coppola* (1986),

41 Conn.Sup. 48, 549 A.2d 1092. *Cf. Esposito v. Buonome* (1986), 642 F.Supp. 760; *Chavous v. Brown* (1990), S.C., 396 S.E.2d 98.

litigant's race; and 3) the facts and circumstances of the case raise an inference the exclusion was based on race. *Batson, supra; Phillips v. State* (1986), Ind., 496 N.E.2d 87. Once the defendant has made this showing, the burden shifts to the other litigant to come forward with a neutral explanation for challenging the juror. The court must then determine whether the defendant has established purposeful discrimination. *Phillips, supra.*

It is not disputed that the first two criteria are met here—Wilson is black and Kauffman exercised a peremptory challenge to remove the only black person impaneled. Wilson has not shown, however, that the facts and circumstances of her case raise an inference the exclusion was based on race.

During voir dire of juror Pulluaim, the trial judge gave Kauffman's counsel a note telling him that he must give a racially neutral reason if he intended to strike Pulluaim. He permitted both Kauffman and Wilson an opportunity to present their views in writing. In her objection, Wilson did not point to any facts in the case, other than the fact that Wilson and Pulluaim were both black, to raise an inference that the discrimination was purposeful:

"Plaintiff objects to the exclusion of juror Charlie Pulluaim since it appears the real basis for the challenge is that the juror is black and the plaintiff is black. There is no evidence that the juror is not fully qualified and counsel for defendant has failed to establish a racially neutral reason for removing juror Pulluaim."

(R. 493).

■ The fact that the only black juror has been excused through the use of peremptory challenge does not raise an inference of racial discrimination. *Thorne v. State* (1988), Ind., 519 N.E.2d 566. Rather, the burden is on the objecting party to show facts that give rise to an inference

that the challenge was based on race. *Id.* Wilson has failed to do so in this case.

■ Kauffman gave the following reason for excusing Pulluaim:

"[S]he did not appear to understand my questions, she knows of Toni Wilson, the next juror coming up is a wife of a physician—a lot of this case turns on medical information."

(R. 491). It is reasonable for a prospective juror who is acquainted with the litigant to be dismissed. *Splunge v. State* (1988), Ind., 526 N.E.2d 977, *cert. denied* (1989), —— U.S. ——, 109 S.Ct. 3165, 104 L.Ed.2d 1028. Based on Pulluaim's response that she had heard of Wilson, the judge could have found that Pulluaim was acquainted with Wilson. In addition, the trial court judge agreed that Pulluaim did not appear to understand Kauffman's questions. The trial court's decision as to Pulluaim's understanding of Kauffman's questions necessarily involved the evaluation of Pulluaim's demeanor and credibility. Because the trial court judge observed Pulluaim during voir dire, he is in the best position to judge Pulluaim's credibility and this court will not interfere with the trial court's decision. *Id.* The final reason given by Kauffman was that the next juror was the wife of a physician. Because there was considerable medical testimony, it is reasonable that, given the choice between an individual who is not familiar with medical terminology and who—being the spouse of a physician—might be familiar with medical terms, Kauffman would choose the latter.[3]

*Issue II*

■ Wilson next claims the trial court erred in refusing her request for a limiting instruction as to the admissibility of Defense Exhibit "B", a medical report prepared by Dr. Gupta. Dr. Papadopoulos, a physician who examined Wilson shortly after the accident, referred Wilson to Dr. Gupta, a neurologist. Dr. Gupta was not

---

**3.** We note that Kauffman could have struck any of the jurors on the panel in order to assure that the physician's wife was on the panel. Thus, we believe this factor alone would not have been sufficient to show that his reason for striking juror Pulluaim was not racially motivated.

However, this factor, taken with the other two factors—that Pulluaim did not seem to understand Kauffman's questions and that she was familiar Wilson—demonstrate that Kauffman's reason for striking Pulluaim was not racially motivated.

called as a witness. However, the videotaped deposition of Dr. Papadopoulos was shown to the jury. During his deposition, Dr. Papadopoulos stated that he took Dr. Gupta's report into consideration in attempting to diagnose Wilson's injuries. After Dr. Papadopoulos' deposition was shown to the jury, Kauffman sought to introduce Dr. Gupta's report, to which Wilson objected as hearsay. When her objection was overruled, Wilson asked the court to instruct the jury that the report was not being placed in evidence to prove the truth of the matters contained in the report, but rather because Dr. Papadopoulos relied on the report in forming his opinion on Wilson's injuries. The court refused to give this instruction. Wilson now argues that, although the court did not err in permitting Dr. Papadopoulos to testify to the contents of the report, the court did err in permitting the report to be placed in evidence without an instruction limiting the purpose for which the report was being admitted. She argues that without such an instruction, the jury would assume the report was admitted to prove the truth of the matters asserted in the report, thereby violating hearsay rules. Kauffman, on the other hand, argues that the court did not err in refusing to give Wilson's instruction because the report was not inadmissible hearsay. He cites *Wilber v. State* (1984), Ind., 460 N.E.2d 142, in support of his argument.

Traditionally, courts have excluded expert testimony which was based on information received from third parties prior to testifying. 13 Miller, Indiana Practice § 703.104 (1984). Indiana, however, has abandoned that rule. For example, in *Wilber, supra,* Dr. Berg, a forensic pathologist testified as to his opinion of the cause of the victim's death. Dr. Berg's testimony referred directly to the content of medical reports prepared by the treating physician. The court held that even though the treating physician's report may be inadmissible, the content of the report was admissible in conjunction with the coroner's findings. The court reasoned that:

"Such reports are routinely relied upon by forensic pathologists in arriving at their opinions as to cause of death, and

when presented to the trier of fact by such persons at a trial, in this form and manner, and for this purpose, testimony reflecting their content is not hearsay."

*Id.* at 143. *See also Wickliffe v. State* (1981), Ind., 424 N.E.2d 1007.

Here, however, the trial court permitted the report itself to be placed into evidence. The question of whether the reports on which experts rely are admissible was not answered in *Wilber.* The question was, however, addressed in *Sills v. State* (1984), Ind., 463 N.E.2d 228. A psychiatrist testified for the State as to the defendant's sanity. The psychiatrist testified that he considered or relied on an electroencephalogram evaluation prepared by another doctor, a diagnostic evaluation of the defendant prepared for the Indiana Boys' School, and psychological and intelligence tests also prepared for the Boys' School. The State placed these reports into evidence over Sills' hearsay objection. Our supreme court held that while it might have been better not to have admitted these documents directly into evidence, the judge did not exceed his discretion in doing so. The court stated:

"A review of the record in this case shows that the three exhibits were not being offered for the truth of the matters contained in them. Rather, they were being offered to establish the foundation of Dr. Duly's diagnosis. Before each exhibit was offered into evidence, Dr. Duly was asked if it constituted material that he considered or relied upon in his evaluation of the defendant. No attempt was made to assert that the facts contained in the exhibits were true. While it might have been better not to have admitted these documents directly into evidence, *see Smith v. State* (1972) 259 Ind. 187, 285 N.E.2d 275, it was not necessarily an error to do so. In short, the trial judge has wide discretion in the admission of evidence. Under the circumstances of this case, we cannot say that the trial judge exceeded his discretion in allowing the state to admit these exhibits."

*Id.* at 234, 235.

Wilson does not dispute that Dr. Papadopoulos stated he relied on Dr. Gupta's re-

port in forming his opinion. However, she points out that the following comment made by Kauffman during his closing argument demonstrates that the report was being offered to prove the truth of the matters contained therein:

> "you will have Dr. Gupta's report back in the jury room and you can read it for yourself. He couldn't find anything"

(R. 340).

■ This statement by Kauffman could be perceived as an attempt to assert the facts contained in Dr. Gupta's report as true. However, Wilson made no objection to this statement when it was made; therefore, she has waived any objection to it. *Jester v. State* (1990), Ind., 551 N.E.2d 840. No other mention was made of Dr. Gupta's report by either party. Therefore, in line with *Sills*, we hold that, while it may have been better not to admit Dr. Gupta's report, it was not error for the court to have done so.

Further, even if the trial court erred in admitting the report, it was not reversible error. Reversible error cannot be predicated upon a trial court's admission or exclusion of evidence which is merely cumulative. *Jordan v. Talaga* (1989), Ind.App., 532 N.E.2d 1174. After reciting Wilson's symptoms, Dr. Gupta reached the following conclusion in his report.

> "I am thus unable to demonstrate any evidence of radiculpathy [sic] [disease of the roots of spinal nerves. *Gould Medical Dictionary* 1148 (4th ed. 1979)] in this patient. It is interesting to note that her auto accident was relatively minor with minimal whiplash injury. The neck and back pain are most likely musculoskeletal in origin. I was not able to convince myself regarding her complaint of shoulder drooping. I do not believe this is neurological in origin. Her treatment will remain symptomatic. I am giving her a ·trial of Naprosyn along with small doses of diazepam."

(R. 399). Wilson herself testified Dr. Gupta could find nothing wrong with her. (R. 281). In addition, Dr. Papadopoulos testified that neither he nor Dr. Gupta could discover anything wrong with Wilson.

Therefore, Dr. Gupta's report was merely cumulative and the trial court did not commit reversible error in refusing to give a limiting instruction.

*Issue III*

■ Finally, Wilson argues the jury award of $10,000 was inadequate. At the very minimum, she claims she is entitled to $11,796.81 because the uncontroverted evidence shows she incurred medical expenses of $7,916.81 and lost income of $3,880.00. She requests a new trial on the issue of damages.

This court will reverse an award as inadequate only when the amount of damages assessed by the jury is so low that it shows the jury was motivated by prejudice, passion, partiality or corruption, or considered some other improper element in reaching its decision. *Barrow v. Talbott* (1981), Ind. App., 417 N.E.2d 917. Where the evidence is conflicting as to the nature, extent, and source of the injury, the jury is in the best position to appraise damages. *Id.*

Here, the nature, extent and source of Wilson's injuries is conflicting. Wilson, Wilson's sister, and Wilson's boyfriend all testified that Wilson was in considerable pain. Wilson testified she could no longer participate in the activities she enjoyed before the accident.

Dr. Hal Miller, who did not treat Wilson until almost five years after the accident, testified that he found Wilson suffered from a chronic cervical/thoracic/lumbar sprain, which he attributed to the sudden acceleration of her car that occurred when her car was hit. (R. 184–85). However, Dr. Papadopoulos, who saw Wilson shortly after the accident, testified he could find nothing wrong with her. Finally, Wilson herself admitted that she had seen several doctors, including doctors at the Mayo Clinic, who could find nothing wrong with her. She also admitted to having injured her back about a year before the accident.

It is obvious, therefore, that the evidence as to the nature, extent and source of Wilson's injury is conflicting. Given this conflict, in addition to the fact that the jury award was close to what Wilson claims is

the minimum due to her, it cannot be said that the jury was motivated by passion, prejudice, or some other improper motive. The jury award of $10,000 is affirmed.

CONOVER and GARRARD, JJ., concur.