Peter DVORAK, Imram Aziz, Brian Gach, Eric Himes, Scott Albright, and Alan Lutz, Appellants–Defendants,

v.

CITY OF BLOOMINGTON, Appellee–Plaintiff.

No. 53A05–9712–CV–503.

Court of Appeals of Indiana.

Dec. 15, 1998.

Michael L. Carmin, Andrews, Harrell, Mann, Chapman & Coyne, P.C., Bloomington, for Appellants–Defendants.

R. Michael Flory, City of Bloomington, Bloomington, for Appellee–Plaintiff.

## OPINION

KIRSCH, Judge.

Peter Dvorak, Imram Aziz, Brian Gach, Eric Himes, Scott Albright, and Alan Lutz (Appellants) appeal the trial court's decision denying their motion for summary judgment on the complaint filed against them by the City of Bloomington (City). They present the following issues for appeal:

I.   Whether the trial court improperly denied the Appellants' motion for summary judgment when it concluded that portions of the City's zoning ordinance did not constitute an ultra vires act.

II.  Whether the trial court erred in concluding that certain portions of the zoning ordinance did not violate the Equal Privileges Clause of Article I, Section 23 of the Indiana Constitution.

We vacate.

1.  The Record does not disclose in which type of zoning district the property is located, but the City's Rental Occupancy Records show that the property is grandfathered for residence by one primary family or by no more than four unrelated adults.

2.  The Ordinance at issue is the following:
    "A family consists of an individual or people related by blood, marriage, or legal adoption, and any dependent children of the household.

## FACTS AND PROCEDURAL HISTORY

Peter Dvorak is the owner of a residential property located at 107 S. Bryan Avenue in Bloomington.[1]  On April 23, 1996, the City filed a complaint against Dvorak, claiming that he violated a zoning ordinance in the Bloomington Municipal Code (Ordinance) by permitting the property to be occupied by more than four adults who were unrelated by blood, marriage, or adoption.[2]  The remaining five Appellants were alleged to have violated the ordinance by occupying the residence.

The City's complaint sought to enjoin Dvorak from future use of the property inconsistent with the Ordinance and to impose a fine of $2,500 per day from the time the violation began until the time it ceased.

Appellants filed a motion for summary judgment, claiming that the Ordinance was void as an ultra vires act, that it violated the Equal Privileges Clause of the Indiana Constitution, and that it violated the concept of due process embodied in the Indiana Constitution.  After a hearing and the submission of briefs by the parties, the trial court denied the motion, finding that the Ordinance was neither ultra vires nor unconstitutional.  At Appellants' request, the trial court certified the ruling for interlocutory appeal and this court accepted the case pursuant to Indiana Appellate Rule 4(B)(6).

## DISCUSSION AND DECISION

When reviewing the grant or denial of summary judgment, we use the same standard used by the trial court.  *Lim v. White,* 661 N.E.2d 566, 568 (Ind.Ct.App.1996).  Summary judgment is appropriate only when the evidentiary matter designated by the parties shows that there is no genuine issue of material fact and that the moving party is

In the RE and RS districts and in the RT7 district except where overlaid by a PRO 15 district, 'family' also includes a group of no more than three (3) adults, and their dependent children, living together as a single housekeeping unit in a dwelling unit.  In all other districts, 'family' also includes a group of no more than five (5) adults and their dependent children, living together as a single housekeeping unit."

Bloomington Municipal Code § 20.02.01.00.

entitled to judgment as a matter of law. *Id.;* Ind. Trial Rule 56(C).

## I. Ultra vires act

Appellants first claim that the Ordinance is void because it constitutes an ultra vires act by the City. When a political subdivision of the state attempts to regulate land use within its jurisdiction, it must do so in accordance with the statute which authorizes it. *Wildwood Park Community Ass'n v. Fort Wayne City Plan Comm'n,* 182 Ind. App. 578, 597, 396 N.E.2d 678, 689 (1979). A zoning regulation may control the use to which real estate in particular localities may be put, but it must be within the limitations and restrictions imposed by statutory or constitutional provisions, and it must have a real and substantial relation to the public health, safety, morals, or general welfare. *Field v. Area Plan Comm'n,* 421 N.E.2d 1132, 1138 (Ind.Ct.App.1981). Failure to comply with these limitations renders the locally adopted ordinance invalid. *Residential Management Sys., Inc. v. Jefferson County Plan Comm'n,* 542 N.E.2d 227, 228 (Ind.Ct.App.1989).

Whether the Ordinance is ultra vires depends upon the interpretation of the enabling statute, which grants local governments the power to zone. When interpreting a statute, the foremost objective is to determine and effect legislative intent. *JKB, Sr. v. Armour Pharmaceutical Co.,* 660 N.E.2d 602, 605 (Ind.Ct.App.1996), *trans. denied.* Statutes must be construed to give effect to legislative intent, and courts must give deference to such intent whenever possible. *Id.* Thus, courts must consider the goals of the statute and the reasons and policy underlying the statute's enactment. *Id.* Courts are to examine and interpret a statute as a whole, giving words their common and ordinary meaning, and not overemphasize a strict, literal, or selective reading of individual words. *Id.* Words and phrases are taken in their plain, ordinary, and usual meaning unless a different purpose is manifested by the statute. *Id.* Where possible, every word must be given effect and meaning, and no part is to be held meaningless if it can be reconciled with the rest of the statute. *Id.* When certain items or words are specified or enumerated in a statute, then, by implication, other items or words not so specified or enumerated are excluded. *Id.*

The enabling statutes set out the purposes for which a zoning body may act and the means by which the body may act. IC 36–7–4–601 states in part,

"(c) When it adopts a zoning ordinance, the legislative body shall act for the purposes of:

(1) securing adequate light, air, convenience of access, and safety from fire, flood, and other danger;

(2) lessening or avoiding congestion in public ways;

(3) promoting the public health, safety, comfort, morals, convenience, and general welfare; and

(4) otherwise accomplishing the purposes of this chapter.

(d) For the purposes described in subsection (c), the legislative body may do the following in the zoning ordinance:

. . . .

(2) In each district, regulate how real property is developed, maintained, and used. This regulation may include:

. . . .

(C) provisions for the treatment of uses, structures, or conditions that are in existence when the zoning ordinance takes effect;

. . . .

(E) requirements to protect the historic and architectural heritage of the community;

(F) requirements for structures, such as location, height, area, bulk, and floor space;

(G) restrictions on the kind and intensity of uses;

. . . .

(I) standards for population density and traffic circulation.

(J) any other provisions that are necessary to implement the purposes of the zoning ordinance."

IC 36–7–4–201 states in pertinent part,

"(b) The purpose of this chapter is to encourage units to improve the health, safety, convenience, and welfare of their

citizens and to plan for the future development of their communities to the end:

 . . . .

 (2) that new communities grow only with adequate public way, utility, health, educational, and recreational facilities;

 . . . .

 (4) that residential areas provide healthful surroundings for family life; and

 (5) that the growth of the community is commensurate with and promotive of the efficient and economical use of public funds."

The City asserts that these statutes mandate that it provide healthful surroundings for family life, and to promote the general welfare and safety of its citizens. We agree. Inherent in the power to zone is the power to define the terms used in the zoning ordinance. By virtue of the Enabling Act, the City has the authority to enact zoning legislation that is constitutional. However, the City does not have the authority to do any unconstitutional act. Thus, whether it was within the City's authority to define "family," turns upon a determination of whether it did so constitutionally. Therefore, we proceed to the dispositive issue: Does the City's Ordinance violate the Indiana Constitution?

## II. Equal Privileges challenge

▮▮▮▮▮▮▮ Appellants claim that the Ordinance violates the Equal Privileges Clause of the Indiana Constitution. When we review a constitutional challenge to a municipal ordinance, we consider the ordinance to stand on the same footing as an act of the legislature. *Whitewater Valley Canoe v. Franklin County Comm'rs,* 507 N.E.2d 1001, 1004 (Ind.Ct. App.1987), *trans. denied.* A zoning ordinance is cloaked with a presumption of constitutionality. *Vanderburgh County Bd. of Comm'rs v. Rittenhouse,* 575 N.E.2d 663, 667 (Ind.Ct.App.1991), *trans. denied* (1992). Therefore, upon appellate review, we accord the ordinance every reasonable presumption supporting its validity and place the burden upon the party challenging it to show unconstitutionality. *See State v. Costas,* 552 N.E.2d 459, 461 (Ind.1990) (discussing standard of review for constitutional challenge to a statute). Before an ordinance will be declared to be repugnant to the Constitution, its fatal constitutional defects must be clearly

apparent. *Id.* An ordinance is not unconstitutional simply because the court might consider it born of unwise, undesirable, or ineffectual policies. *Id.*

Article I, Section 23 of the Indiana Constitution provides: "The General Assembly shall not grant to any citizen, or any class of citizens, privileges or immunities, which, upon the same terms, shall not equally belong to all citizens." The supreme court has determined that equal privileges and immunities claims brought under Article I, Section 23 are to be analyzed separately from claims brought under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. *Collins v. Day,* 644 N.E.2d 72 (Ind.1994). A Section 23 analysis uses a single standard to determine whether a law violates the Indiana Constitution as opposed to a system of varying degrees of scrutiny depending on whether the classification involves a suspect class or a fundamental right, as with Fourteenth Amendment analysis. *Id.* at 80. That standard consists of two requirements:

"First, the disparate treatment accorded by the legislation must be reasonably related to inherent characteristics which distinguish the unequally treated classes. Second, the preferential treatment must be uniformly applicable and equally available to all persons similarly situated."

*Id.* Courts must employ this standard while giving "substantial deference to legislative discretion." *Id. Collins* identified two kinds of Equal Privileges claims—those that seek to invalidate enactments which grant special privileges and those that seek to invalidate enactments which seek to impose special burdens. *Id.* at 79. Appellants' claim falls into the latter category. The burdens of more restricted housing and exclusion from certain neighborhoods fall only on those who live in households consisting of more than three or more than five unrelated adults.

Here, Appellants assert that the Ordinance fails both prongs of the *Collins* test. They first argue that the disparate treatment is not reasonably related to the distinguishing characteristic of the unequally treated class. In *Collins,* our supreme court stated that the class must be germane to the subject matter

and the object to be attained. *Id.* at 78–79. In discussing this test, the court stated,

> "where the legislature singles out one person or class of persons to receive a privilege or immunity not equally provided to others, such classification must be based upon distinctive, inherent characteristics which rationally distinguish the unequally treated class, and the disparate treatment accorded by the legislation must be reasonably related to such distinguishing characteristics. We believe that this requirement incorporates and satisfies the often expressed concerns that such legislative classifications be 'just,' 'reasonable,' 'substantial,' 'not artificial,' 'not capricious,' and 'not arbitrary.'"

*Id.*

Appellants contend that the City has failed to offer any basis for the class distinction. The distinction is not based on inherent characteristics. Even if the class itself were acceptable, Appellants argue that there is no link between the class and the subject matter of the statute. Here, the disparate treatment accorded by the Ordinance is to permit only households consisting of a certain number of unrelated persons in certain neighborhoods. The issue, then, is whether there are inherent distinctions between households based on whether the adults in the household are related or unrelated that are reasonably connected to imposing the burden of exclusion from some neighborhoods. Appellants maintain that all households have the same interest in enjoying healthful surroundings for family life (one of the permissible purposes of zoning) and in attaining housing, yet some households are excluded from some neighborhoods.

■ In *Collins,* our supreme court stated that one who challenges legislation under the privileges and immunities clause of the Indiana Constitution has the burden "to negative every conceivable basis which might have supported the classification." *Id.* at 80 (quoting *Johnson v. St. Vincent Hospital,*

*Inc.,* 273 Ind. 374, 392, 404 N.E.2d 585, 597 (1980)). Literally applied, this language—which is limited only by the boundaries of imagination—would impose a burden so onerous that no challenger could ever satisfy it and would render the privileges and immunities clause of our constitution meaningless.

Because our supreme court could not have intended to render a fundamental constitutional protection meaningless, it could not have intended for its words to be literally construed, and we do not so construe them. Rather, we read the language reasonably to require that the challenger disprove those bases for the challenged classification that are readily apparent, including but not limited to those set forth in the legislation itself, and those reasonably relied upon by the proponent of the legislation during the course of the litigation.

■ In this case, Appellants submitted an interrogatory to the City asking, "Please identify the City's justification(s) and rationale(s) for enacting Bloomington Municipal Code (the Code) sections 20.07.04.01 ("Purpose"), and 20.02.01.00 (definition of "Family")." *Record* at 126. The City objected to this question on relevancy grounds and sought and received an order from the trial court relieving it of the duty to answer the interrogatory. Appellants, as challengers of the Ordinance, must disprove the reasonable bases for the classification, yet their efforts to discover what bases the City advances in support of its legislation have been thwarted. Appellants cannot be expected to proceed without any indication of what the City believes is a reasonable basis for the classification created by the Ordinance. Similarly, we cannot ascertain whether Appellants have met their burden when there has been no pointed discussion about what the City advances as the reasonable base for the classification in the Record or in the oral argument before this court.[3] We find both Appellants' and our own tasks impossible on the Record

---

3. In its Brief, the City alludes to avoiding occupancy that would likely create "traffic, visitors, parties, comings and goings, parking problems and increased noise." *Appellee's Brief* at 20. It also refers to "traffic and pollution" and "potential negative externalities" as items the City could have considered in enacting the Ordinance. *Id.* at 21–22. Nowhere, however, does the City assert what interest the Ordinance is actually designed to promote. Absent this information, Appellants cannot be expected to disprove a reasonable relationship between this interest and the classification created by the Ordinance.

before us. For these reasons, we express no opinion on the merits of Appellants' argument. We base our decision today solely on the incomplete state of the Record before us.

We vacate and remand for further proceedings consistent with this opinion. In particular, Appellants should be given a reasonable opportunity for discovery in order to determine what goals the Ordinance was designed to promote.

Vacated.

SULLIVAN and ROBB, JJ., concur.