Peter **DVORAK, Imram Aziz, Brian Gach, Eric Himes, Scott Albright, and Alan Lutz, Appellants–Defendants,**

v.

**CITY OF BLOOMINGTON, Appellee–Plaintiff.**

**No. 53A01–0105–CV–188.**

Court of Appeals of Indiana.

May 17, 2002.

Michael L. Carmin, Andrews, Harrell, Mann, Carmin & Parker, P.C., Bloomington, IN, Julia Blackwell Gelinas, Nelson D. Alexander, Locke Reynolds LLP, Indianapolis, IN, Attorneys for Appellants.

R. Michael Flory, City of Bloomington, Bloomington, IN, Attorney for Appellee.

J. Alexander Tanford, Bloomington, IN, Kenneth J. Falk, Indianapolis, IN, Attorneys for Amicus Indiana Civil Liberties Union.

Michael J. Lewinski, Timothy E. Ochs, Ice Miller, Attorneys for Amicus Indiana Association of Cities & Towns.

## OPINION

KIRSCH, Judge.

Peter Dvorak, Imram Aziz, Brian Gach, Eric Himes, Scott Albright, and Alan Lutz (Appellants) appeal the trial court's adverse decision on the complaint filed against them by the City of Bloomington (City). They present the following issues for appeal:

I. Whether a municipal zoning ordinance is state action for purposes of an Equal Privileges and Immunities challenge.

II. Whether a zoning ordinance restricting the number of unrelated adults who may reside in the same house violates the Equal Privileges and Immunities Clause of Article I, Section 23 of the Indiana Constitution where the City's stated objectives for such an ordinance are to control trash, noise, and traffic and to maintain core neighborhoods by reducing adult population density.[1]

We reverse.

## FACTS AND PROCEDURAL HISTORY

Peter Dvorak is the owner of a residential property in Bloomington. On April 23, 1996, the City filed a complaint against Dvorak, claiming that he violated a zoning ordinance in the Bloomington Municipal Code (Ordinance) by permitting the property to be occupied by more than the designated number of adults who were unrelated by blood, marriage, or adoption.[2] The City alleged that the remaining five Appellants violated the Ordinance by occupying the residence.

The City's complaint sought to enjoin Dvorak from future use of the property inconsistent with the Ordinance and to impose a fine of $2,500 per day from the time the violation began until the time it ceased.

Appellants filed a motion for summary judgment, claiming that the Ordinance was void as an ultra vires act, that it violated the Equal Privileges and Immunities Clause of the Indiana Constitution, and that it violated the concept of due process embodied in the Indiana Constitution. After a hearing and the submission of briefs by the parties, the trial court denied the motion, finding that the Ordinance was neither ultra vires nor unconstitutional. At Appellants' request, the trial court certified the ruling for interlocutory appeal. On appeal, we vacated the decision of the trial court and remanded for further proceedings, including a determination of the goals the Ordinance was designed to promote. *See Dvorak v. City of Bloomington,*

---

1. Appellants also contend that the City's passage of the Ordinance is an ultra vires act. As we explained in the previous appeal, the City has the power to zone, but only to do so constitutionally. Thus, the Ordinance is not ultra vires if it is constitutional. Accordingly, whether the Ordinance violates the Privileges and Immunities clause is the determinative issue.

2. The Ordinance at issue is the following: "A family consists of an individual or people related by blood, marriage, or legal adoption, and any dependent children of the household. In the RE and RS districts and in the RT7 district except where overlaid by a PRO 15 district, 'family' also includes a group of no more than three (3) adults, and their dependent children, living together as a single housekeeping unit in a dwelling unit. In all other districts, 'family' also includes a group of no more than five (5) adults and their dependent children, living together as a single housekeeping unit." *Appellants' Appendix* at 165 (quoting Bloomington Municipal Code § 20.02.01.00).

702 N.E.2d 1121 (Ind.Ct.App.1998) ("*Dvorak I* ").

On March 1, 2000, the trial court conducted a bifurcated bench trial on the constitutionality of the Ordinance. It subsequently issued a judgment finding the Ordinance constitutional. After a motion to correct error challenging the inclusion in the trial court's judgment of findings related to the breach of the Ordinance in this case, the trial court issued an order granting the motion to correct error. On April 6, 2001, the trial court entered an agreed order on the remaining issues. Appellants now appeal.

## DISCUSSION AND DECISION

### I. State Action

Neither party discusses whether the Equal Privileges and Immunities Clause of the Indiana Constitution applies to actions of a municipal zoning authority. However, Amicus Indiana Civil Liberties Union argues that the City's actions are subject to Equal Privileges and Immunities analysis.

■ Article I, Section 23 of the Indiana Constitution provides: "The General Assembly shall not grant to any citizen, or any class of citizens, privileges or immunities, which, upon the same terms, shall not equally belong to all citizens." Thus, by its express terms, the provision applies only to acts of the General Assembly. However, the clause has been interpreted broadly: " 'Since [*Haas v. South Bend Comm. Sch. Corp.*, 259 Ind. 515, 289 N.E.2d 495 (1972) ], the supreme court has not limited application of Art. I, § 23 to actions of the general assembly. Therefore, when the state is sufficiently involved to treat decisive conduct as state action, Art. I § 23 applies.' " *Palin v. Indiana State Pers. Dep't,* 698 N.E.2d 347, 353–54 (Ind.Ct.App.1998) (quoting *Indiana High Sch. Athletic Ass'n v. Avant,* 650 N.E.2d 1164, 1169 (Ind.Ct.App.1995), *overruled on other grounds by Indiana High Sch. Athletic Ass'n v. Reyes,* 694 N.E.2d 249 (Ind. 1997) (footnote omitted)). Courts have therefore employed the "state action" test to determine whether a plaintiff may invoke the Equal Privileges and Immunities Clause. *Lutz v. Fortune,* 758 N.E.2d 77, 84 (Ind.Ct.App.2001). In order for there to be state action, it must be determined that 1) the claimed deprivation has resulted from the exercise of a right or privilege having its source in governmental authority; and 2) there is some figure present in the action who can be fairly characterized as a state actor. *Osmulski v. Becze,* 638 N.E.2d 828, 833 (Ind.Ct.App.1994); *Wilson v. Kauffman,* 563 N.E.2d 610, 612 (Ind.Ct. App.1990), *trans denied cert. denied* 502 U.S. 968, 112 S.Ct. 439, 116 L.Ed.2d 458 (1991).

While we have found no Indiana cases discussing the applicability of the Clause in the case of a municipal zoning authority, Indiana courts have applied the Clause in a variety of other situations. *See Indiana High Sch. Athletic Ass'n v. Carlberg,* 694 N.E.2d 222, 229 (Ind.1997) (decisions of the IHSAA with respect to student-athletes constitute state action for purposes of review under the Equal Protection and the Privileges and Immunities Clause); *Palin,* 698 N.E.2d at 353–54 (decisive actions of administrative agency may be state action); *Osmulski,* 638 N.E.2d at 833 (motion for an automatic change of venue filed by litigant was state action because it was based on court rules); *Wilson,* 563 N.E.2d at 612 (litigant's use of a statutorily granted peremptory challenge is an exercise of a right rooted in governmental authority).

■ Here, the claimed deprivation, exclusion from certain neighborhoods, has resulted from the exercise of the City's zoning power, a power granted to local governments by the state. The City's mu-

nicipal zoning body can also fairly be characterized as a state actor, as it is a unit of municipal government. Accordingly, we hold that the acts of a city through its municipal zoning authority are state action subject to the Equal Privileges and Immunities Clause. In doing so, we note that our decision today comports with the treatment that Indiana courts have historically given municipalities in Equal Privileges and Immunities Clause challenges. *See Kersey v. City of Terre Haute*, 161 Ind. 471, 68 N.E. 1027 (1903) (applying Privileges and Immunities Clause to municipal taxation scheme). *See also Lovell v. City of Griffin*, 303 U.S. 444, 58 S.Ct. 666, 82 L.Ed. 949 (1938) (holding that municipal ordinances adopted under state authority constitute state action and are subject to equal protection analysis under United States Constitution).

## II. Equal Privileges and Immunities Challenge

■ Appellants claim that the Ordinance violates the Privileges and Immunities Clause of the Indiana Constitution. When we review a constitutional challenge to a municipal ordinance, we consider the ordinance to stand on the same footing as an act of the legislature. *Dvorak I*, 702 N.E.2d at 1124 (citing *Whitewater Valley Canoe Rental, Inc. v. Bd. of Franklin County Comm'rs*, 507 N.E.2d 1001, 1004 (Ind.Ct.App.1987), *trans. denied*). Accordingly, a zoning ordinance is cloaked with a presumption of constitutionality. *Cowart v. State*, 756 N.E.2d 581, 583 (Ind. Ct.App.2001), *trans. denied* (2002); *Dvorak I*, 702 N.E.2d at 1124.

■ Upon appellate review, we accord the ordinance every reasonable presumption supporting its validity and place the burden upon the party challenging it to show unconstitutionality. *Dvorak I*, 702 N.E.2d at 1124 (citing *State v. Costas*, 552 N.E.2d 459, 461 (Ind.1990) (discussing standard of review for constitutional challenge to a statute)). Before an ordinance will be declared repugnant to the Constitution, its fatal constitutional defects must be clearly apparent. *Id.* An ordinance is not unconstitutional simply because the court might consider it born of unwise, undesirable, or ineffectual policies. *Id.*

■ Equal privileges and immunities analysis uses a single standard to determine whether a law violates the Indiana Constitution as opposed to a system of varying degrees of scrutiny depending on whether the classification involves a suspect class or a fundamental right, as with Fourteenth Amendment analysis. *Collins v. Day*, 644 N.E.2d 72, 80 (Ind.1994). That standard consists of two requirements. First, the differential statutory treatment must be reasonably related to inherent characteristics that distinguish the unequally treated class. *Ben–Yisrayl v. State*, 753 N.E.2d 649, 656 (Ind.2001), *petition for cert. filed*, No. 01–8443 (Feb. 1, 2002); *Schulz v. State*, 731 N.E.2d 1041, 1045 (Ind.Ct.App.2000), *trans. denied*. Second, the preferential treatment must be uniformly applicable and equally available to all persons similarly situated. *Ben Yisrayl*, 753 N.E.2d at 656; *Boggs v. Tri-State Radiology, Inc.*, 730 N.E.2d 692, 696 (Ind.2000). Courts must employ this standard while giving substantial deference to the legislature. *Boggs*, 730 N.E.2d at 696; *Collins*, 644 N.E.2d at 80; *Schulz*, 731 N.E.2d at 1045.

Here, Appellants assert that the Ordinance fails both prongs of the Equal Privileges and Immunities analysis.[3] First,

---

**3.** The *Collins* court identified two kinds of Equal Privileges and Immunities claims— those that seek to invalidate enactments which grant special privileges and those that

they argue that the disparate treatment is not reasonably related to the distinguishing characteristic of the unequally treated class. In *Collins*, our supreme court explained that the class must be germane to the subject matter and the object to be attained. *Collins*, 644 N.E.2d at 78–79. In discussing this test, the court stated,

"where the legislature singles out one person or class of persons to receive a privilege or immunity not equally provided to others, such classification must be based upon distinctive, inherent characteristics which rationally distinguish the unequally treated class, and the disparate treatment accorded by the legislation must be reasonably related to such distinguishing characteristics. We believe that this requirement incorporates and satisfies the often expressed concerns that such legislative classifications be 'just,' 'reasonable,' 'substantial,' 'not artificial,' 'not capricious,' and 'not arbitrary.'"

*Id.*

Appellants contend that the City has "failed to demonstrate a real and substantial nexus between the Ordinance, its disparate treatment of two classes of citizens and its ultimate goals of controlling noise, trash, and traffic and maintaining core neighborhoods by reducing adult population density" *Appellants' Brief* at 7. Here, the disparate treatment accorded by the Ordinance is to prohibit households consisting of a specified number of unrelated persons from living in certain neighborhoods while allowing households containing the same number of related adults to live there. The issue, then, is whether there are inherent distinctions between households consisting of unrelated adults versus those consisting of related adults that are reasonably connected to imposing the burden of exclusion from some neighborhoods. Appellants maintain that all households have the same interest in enjoying healthful surroundings for family life (one of the permissible purposes of zoning) and in attaining housing, yet some households are excluded from some neighborhoods.

The City argues that through its zoning power it has the right to establish residential zones. It contends that "family composition rules are essential" to zoning for residential zones. *Appellee's Brief* at 10. It characterizes its definition of family in this context as mere "legislative line-drawing," that while perhaps inexact, is nonetheless entitled to deference. *Id.*

Courts in other jurisdictions have considered whether similar ordinances violate state constitutional due process provisions and have held that the legislation is not reasonably related to the ends it is designed to achieve, including density control, alleviation of traffic congestion, and preservation of neighborhoods.

In *Charter Township of Delta v. Dinolfo*, 419 Mich. 253, 351 N.W.2d 831 (1984), in which the supreme court of Michigan held that the ordinance at issue violated the state constitutional guarantee of due process. The ordinance at issue stated that single family residences could only be occupied by an individual, or a group of two or more persons related by blood, marriage, or adoption, and not more than one other unrelated person. *Id.* at 833. The court agreed that preservation of the residential nature of a neighborhood is a proper subject for legislative protection; however, it found that there was no ration-

seek to invalidate enactments which seek to impose special burdens. *Id.* at 79. Appellants' claim falls into the latter category. The burdens of more restricted housing and exclu-

sion from certain neighborhoods fall only on those who live in households consisting of more than a specified number of unrelated adults.

al relationship between that goal and the means chosen to address it. It held that the classification created by the ordinance was not reasonably related to the achievement of the stated goals, and was arbitrary and capricious, thereby depriving six unrelated persons who wished to live with a biological family of the use of their property without due process of law. *Id.* at 840–41. Other courts have reached a similar result. *See Santa Barbara v. Adamson,* 27 Cal.3d 123, 164 Cal.Rptr. 539, 610 P.2d 436 (1980) (invalidating ordinance defining family as related persons or not more than five unrelated persons on state privacy grounds); *State v. Baker,* 81 N.J. 99, 405 A.2d 368 (1979) (invalidating ordinance defining family as related persons or not more than four unrelated persons on state due process and privacy grounds); *Baer v. Town of Brookhaven,* 73 N.Y.2d 942, 540 N.Y.S.2d 234, 537 N.E.2d 619 (1989) (invalidating ordinance defining family as a number of related individuals or not more than four unrelated individuals on state due process grounds). *See also Kirsch v. Prince George's Co., Maryland,* 331 Md. 89, 626 A.2d 372, *cert. denied* 510 U.S. 1011, 114 S.Ct. 600, 126 L.Ed.2d 565 (1993) (invalidating ordinance imposing special restrictions on properties occupied by three to five unrelated persons registered as students at educational institutions on state and federal equal protection grounds).

Conversely, a number of courts have rejected challenges to similar ordinances. *See Ass'n for Educ. Dev. v. Hayward,* 533 S.W.2d 579 (Mo.1976) (upholding ordinance against state and federal due process challenges that defined family as related persons or not more than two unrelated persons, but providing no independent state constitutional law analysis); *State v. Champoux,* 5 Neb.App. 68, 555 N.W.2d 69 (1996), *aff'd* 252 Neb. 769, 566 N.W.2d 763 (1997) (upholding ordinance defining fami-

ly as one or more related persons plus not more than two additional unrelated persons against state constitutional due process challenge); *Town of Durham v. White Enters., Inc.,* 115 N.H. 645, 348 A.2d 706 (1975) (upholding ordinance restricting occupancy by unrelated persons by density, but providing no such limitation on related persons).

Several states have state constitutional provisions analogous to Indiana's Equal Privileges and Immunities Clause. Of these, two have addressed an issue similar to the one before this court. In both of these cases, the courts of these states held that the ordinance did not violate the state constitutional Equal Privileges clause.

In *Dinan v. Bd. of Zoning Appeals of the Town of Stratford,* 220 Conn. 61, 595 A.2d 864 (1991), the ordinance at issue defined family as, "[a]ny number of individuals related by blood, marriage or adoption, living together as a single housekeeping unit." *Id.* at 865. The supreme court of Connecticut held that the ordinance did not violate the Equal Privileges Clause of the state constitution because the legislative body could reasonably have concluded that occupants such as those in this case were less likely to develop the kind of friendly relationships with neighbors that abound in residential districts occupied by traditional families. Thus, the differential treatment was rational. This case is distinguishable, however, because the ordinance at issue, unlike the one in the present case, did not include any number of unrelated individuals in the definition of family.

An ordinance more similar to the one at issue here was reviewed in *City of Brookings v. Winker,* 554 N.W.2d 827 (S.D.1996). At issue in *City of Brookings* was the definition of "family" in the zoning ordinance, which stated in relevant part:

"An individual or two or more persons related by blood or law occupying a dwelling unit and living as a single household entity or two or more persons related by blood or law occupying a dwelling unit and living as a single household entity together with the number of unrelated adults so that the family contains no more than three adults who are unrelated by blood or law or not more than three unrelated adults occupying a dwelling unit and living as a single household entity."

*Id.* at 829. The supreme court of South Dakota rejected the party's Equal Privileges challenge to the ordinance, stating that Brookings was a college town with unavoidable problems of controlling population density. It stated that the ordinance was rationally related to the ends of controlling density and that the challenger had not met its burden of overcoming the ordinance's presumption of validity. *Id.* at 831.

As we explained in *Dvorak I,* under Indiana's Equal Privileges and Immunities jurisprudence, one who challenges legislation has the burden to disprove those bases for the challenged classification that are readily apparent, including but not limited to those set forth in the legislation itself, and those reasonably relied upon by the proponent of the legislation during the course of the litigation. *Dvorak I,* 702 N.E.2d at 1125. Unlike in the previous appeal, we are not left to speculate about the City's reasons for enacting the Ordinance.

At the hearing, Don Hastings, the City's Planning Director, testified that the purpose of the Ordinance was the protection of core neighborhoods through the reduction of adult population density and the reduction of external impacts such as traffic, trash generation, noise, and inappropriate parking of vehicles. Hastings stated that the basis for his conclusion that regulating unrelated adults would promote these values was based on "professional literature" and "planning premises" that unrelated adults cause greater external impacts than related adults through more independent lifestyles. *Transcript* at 65, 68. He explained, however, that these sources were not "expert studies." *Id.* He further noted anecdotal evidence from a non-random survey of students at Indiana University that showed a higher rate of car travel than in years past. Hastings also testified, however, that scenarios existed under which a household might change from "related" to "unrelated" status with no resulting change in external impacts. He had no report or study to support his statement that unrelated adults cause greater impacts; instead he relied on a "community plan that was developed after years worth of intensive community input." *Id.* at 113. He also admitted that so long as the household members are related, there was no limit to the number of people that could live in a single house.

The only evidence before us shows that the Ordinance is based on mere planning premises without any documented support in professional literature. There is no showing that the classification created by the Ordinance was reasonable or substantial. Rather, the same impacts could be caused regardless of the relational status of the household members. Thus, the bases for the classification offered by the City were pretextual and were not reasonably relied upon to create a scheme in which one class of citizens is burdened. Accordingly, we hold that the Ordinance violates the Equal Privileges and Immunities Clause of the Indiana constitution.

Finally, we note the City's argument that Appellants and any others burdened by the classification created by the Ordi-

nance voluntarily place themselves in the burdened class. Accordingly, it maintains that constitutional safeguards do not apply. The City argues that any individual can bring himself within its definition of family and thereby avail himself of the privilege of living in a single family residential area. It explains that by removing a single unrelated member of the household, a non-complying household can become compliant. However, complying in other situations may involve decisions relating to marriage, family, and child rearing. Our supreme court has stated:

> "The contours of the constitutional right to privacy screen relationships and decisions relating to marriage, procreation, motherhood, child rearing and education from public intrusion and interference when there is a legitimate expectation of privacy."

*State ex rel. Pollard v. Criminal Court of Marion County, Div. One,* 263 Ind. 236, 252, 329 N.E.2d 573, 585 (1975). The City's assertion that one may voluntarily take action to comply with the Ordinance is tantamount to stating that one may have a constitutional right, but may not exercise that right in certain ways without penalty. Constitutional protection of the right to privacy applies regardless of the choice an individual makes with regard to marriage and family. Therefore, the City may not burden those who exercise the choice not to create a "family" as defined by the City.

Reversed.

SULLIVAN, J., and ROBB, J., concur.