

**FILED**

Aug 19 2015, 8:26 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT

Michael L. Carmin
Gregory A. Bullman
CarminParker, PC
Bloomington, Indiana

ATTORNEY FOR APPELLEE

John A. Stroh
Sharpnack Bigley Stroh & Washburn LLP
Columbus, Indiana

IN THE

# COURT OF APPEALS OF INDIANA

John Counceller,

*Appellant-Petitioner,*

*v.*

City of Columbus Plan
Commission,

*Appellee-Respondent.*

August 19, 2015

Court of Appeals Case No.
03A05-1503-PL-127

Appeal from the Bartholomew
Circuit Court
The Honorable James D. Worton,
Special Judge

Trial Court Cause No. 03C01-1408-
PL-3420

**Bradford, Judge.**

# Case Summary

In 1999, Appellant-Petitioner John Counceller submitted the first of four applications to subdivide his lot in the Indian Hills Estates ("the Lot") in Columbus. The first two were withdrawn prior to action by Appellee-

Respondent City of Columbus Plan Commission ("the Commission"). In 2013, Counceller again requested to subdivide the Lot, and the Columbus Plat Committee ("the Plat Committee") granted primary approval to the application. Although no objection was filed to this approval, Counceller never acted on it, and it expired. The first three applications were to subdivide the Lot into two lots.

[2] In 2014, Counceller again submitted an application that he be allowed to subdivide the Lot, this time into three lots, and the Plat Committee again granted primary approval to the request. When notified of the Plat Committee's approval, all or almost all of the other property owners in Indian Hills Estates objected. Citing a Columbus ordinance that requires 75% of property owners in a subdivision to approve a further subdivision of one of the lots, the Commission ultimately rejected Counceller's application. Counceller argues that the Commission should be estopped from relying on the 75% requirement and that it improperly abdicated its responsibility to exercise exclusive control of the subdivision of land to Counceller's neighbors. We affirm.

## Facts and Procedural History

[3] Columbus has had three subdivision control ordinances, the first in effect from 1949 to 1968, the second from 1968 to 1982, and the third from 1982 to the present. Indian Hills Estates was platted in 1962 and, although not within Columbus city limits at the time, was subject to Columbus's subdivision control

ordinance and has since been annexed in any event. Section 16.24.225 of the current subdivision control ordinance ("Section 225"), governing the resubdivision of land, provides as follows:

**Section 16.24.225 Resubdivision of land**

A.  Procedure for Resubdivision. Whenever a land owner desires to resubdivide an already approved major subdivision plat, the land owner shall apply for the resubdivision using the same procedure prescribed for the subdivision of land.

B.  For any resubdivision where the proposed changes may have an impact on the existing subdivision, the application shall include the signed consent of 75% of the owners of property in the existing subdivision. Such changes include the following:

   1.  Any change in street circulation pattern or other significant change in a public improvement;

   2.  The addition of one or more buildable lots;

   3.  Any change in the amount of land reserved for public use or the common use by lot owners;

   4.  Any other change which would have an adverse effect on the use and enjoyment of property in the existing subdivision.

C.  The staff shall make a determination as to whether a proposed change will have a significant impact as defined in Subsection B. The staff decision may be appealed to the Commission.

D.  Waiver. A property owner may request a waiver from the requirements of Subsection B. The Commission may waive the requirement for the consent of 75% of the property owners in the subdivision if it finds that the proposed change will not have a significant impact on the existing subdivision. The Commission, after receiving an

application for resubdivision that includes an express request for waiver, shall consider the request after a public hearing. Notice of the hearing shall be given to interested parties as defined in the Rules of Procedure.

E.   Covenants. Any new lots created by a resubdivision shall be subject to any covenants and restrictions that applied to the original subdivision plat.

F.   This section shall not apply to land or parcels shown and clearly labeled on the preliminary or final plat as reserved or intended for future development. (Ord. No. 24, 1999, §3, 9-7-99)

COLUMBUS, IND., SUBDIVISION CONTROL ORDINANCE 16.24.225 (1999).

[4]   Counceller owns the Lot in Indian Hills Estates. The Lot consists of approximately 3.26 acres, while the average lot size in Indian Hills Estates is approximately 2.26 acres. In 1999 and 2010, Counceller submitted applications to the Commission to subdivide the Lot into two lots. In 2013, Counceller again submitted an application to subdivide the lot in two, which request was approved by the Plat Committee on October 24, 2013. Counceller did not execute the approval and it expired in January of 2014.

[5]   On March 10, 2014, Counceller filed a fourth application to resubdivide the Lot, this time into three lots, with proposed areas of approximately 1 acre, 1.06 acres, and 1.26 acres. On March 20, 2014, the Plat Committee approved Counceller's application. Public notice of the Plat Committee's approval was provided on May 23, 2014. On May 30, 2014, the Columbus Planning Department received an appeal of the Plat Committee's approval, which appeal was filed by Counceller's neighbors Mark Elwood and Angie May and

approved by all or almost all of the other property owners of Indian Hills Estates.

On July 9, 2014, the Commission met, conducted a hearing, and voted to deny Counceller's request to resubdivide on the basis that it did not receive the consent of 75% of the other property owners in Indian Hills Estates. On August 1, 2014, Counceller petitioned for judicial review of the Commission's decision in Bartholomew Circuit Court, arguing that the Commission should be estopped from enforcing the 75% requirement of Section 225 and that the Commission improperly abdicated its authority to Counceller's neighbors. On February 26, 2015, the trial court denied Counceller's petition.

# Discussion and Decision

## I. Estoppel

Counceller contends that the Commission should be estopped from denying his request to resubdivide the Lot.

> The doctrine of equitable estoppel requires three elements: "(1) lack of knowledge and of the means of knowledge as to the facts in question, (2) reliance upon the conduct of the party estopped, and (3) action based thereon of such a character as to change his position prejudicially." *Hannon v. Metropolitan Development Comm'n*, 685 N.E.2d 1075, 1080-81 (Ind. Ct. App. 1997). [T]he general rule [is] that a governmental entity cannot be estopped by the unlawful acts of public officials. *Cablevision of Chicago v. Colby Cable Corp.*, 417 N.E.2d 348, 354 (Ind. Ct. App. 1981). However, this prohibition is not absolute. *Id.* at 356. This court has recognized equitable estoppel can be applied against a governmental entity when "the public interest" will be

threatened. *Advisory Board of Zoning Appeals of Hammond v. Foundation for Comprehensive Mental Health, Inc.,* 497 N.E.2d 1089, 1092 (Ind. Ct. App. 1986); *see also Cablevision of Chicago,* 417 N.E.2d at 357.…

"Estoppel cannot be applied when the facts are equally known or accessible to both parties." *Comprehensive Mental Health,* 497 N.E.2d at 1093. [P]roperty owners [are] charged with knowledge of the applicable subdivision ordinance[.] *Board of Zoning Appeals v. Leisz*, 702 N.E.2d 1026, 1030 (Ind. 1998)[.]

*Johnson Cnty. Plan Comm'n v. Tinkle*, 748 N.E.2d 417, 419-20 (Ind. Ct. App. 2001).

[8] Counceller argues essentially that the Commission should be estopped from enforcing because nobody with the Plat Committee or planning staff told him that he was required to have consent of 75% of the other property owners in Indian Hills Estates. Consequently, Counceller's argument continues, his ignorance of the 75% requirement caused him to allow his third resubdivision application to lapse to his detriment.

[9] At the very least, however, Counceller has failed to establish the first element of his estoppel claim: a lack of knowledge of the provisions of Section 225 or the means to acquire that knowledge. To the extent that Counceller argues that he was unaware of the 75% requirement and that the Commission was under some obligation to inform him of it, it is well-settled that "[p]roperty owners are charged with knowledge of ordinances that affect their property." *Story Bed & Breakfast, LLP v. Brown Cnty. Area Plan Comm'n*, 819 N.E.2d 55, 64 (Ind. 2004).

As a general rule, equitable estoppel will not be applied against governmental authorities. *Id.* Our courts have been "hesitant to allow an estoppel in those cases where the party claiming to have been ignorant of the facts had access to the correct information." [*Cablevision of Chicago,* 417 N.E.2d at 355]. The State will not be estopped in the absence of clear evidence that its agents made representations upon which the party asserting estoppel relied. *Indiana Dep't of Envtl. Mgmt. v. Conard,* 614 N.E.2d 916, 921 (Ind. 1993). However, "estoppel may be appropriate where the party asserting estoppel has detrimentally relied on the governmental entity's affirmative assertion or on its silence where there was a duty to speak." *Equicor Dev. v. Westfield-Washington Township,* 758 N.E.2d 34, 39 (Ind. 2001).

*Id*. at 67.

[10] Simply put, pursuant to *Story Bed & Breakfast*, Counceller is charged with knowledge of the provisions of Section 225, and Counceller makes no claim that the Commission or any related entity made any representations that they would not be enforced in his case. In the absence of any evidence of an affirmative assertion (or silence when there was a duty to speak), Counceller's estoppel claim must fail.

[11] Counceller is essentially arguing that the Commission's alleged failure to enforce Section 225's 75% requirement in his previous three resubdivision applications should be taken as an assertion that it would not be enforced in his

fourth.[1]  As the Commission points out, however, the previous three applications apparently never got to the point where the 75% requirement became an issue.  In 1999 and 2010, Counceller withdrew the applications before the Commission took any action on them.  In 2013, the 75% requirement did not arise because none of the other property owners in Indian Hills Estates objected when given notice of the Plat Committee's approval of Counceller's application.  Indeed, according to Columbus Planning Director Jeff Bergman, Section 225's 75% requirement had never been an issue because, to the best of his knowledge, no resubdivision request had ever been objected to.  (Appellant's App. 138).  We conclude that a more accurate way of characterizing the record would be to say that Section 225's 75% requirement simply never arose in Counceller's previous three applications.  In our view, this cannot be taken as an assertion that Section 225 would not be enforced in the fourth.

[12]  Additionally, Counceller's request that we draw parallels between all four of his resubdivision requests is misguided because he did not request the same thing in all four.  As previously mentioned, Counceller requested the first three times to resubdivide the Lot into two, but the fourth time requested to resubdivide it into

---

[1] Counceller did not submit any written consent with his resubdivision application, as required by the plain language of Section 225, and yet the Commission did not reject his application and the Plat Committee gave it primary approval.  Counceller suggests that this should be taken as an admission that the consent of the other property owners would not be required.  We disagree.  Columbus Planning Director Jeff Bergman testified that "[t]he way the Plat Committee is set up is the notification happens after the [primary] approval." Appellant's App. p. 94.  We do not believe that the Commission's and Plat Committee's willingness to allow Counceller's application to proceed despite its noncompliance with Section 225 falls short of an affirmative indication that the 75% requirement would not be enforced.

*three* lots. Even assuming, *arguendo*, that Counceller had a right to expect that a fourth, identical request for resubdivision would be treated the same as the previous three by the Commission, the fourth request was not, in fact, identical. Because Counceller failed to establish that was denied the means to gain knowledge of the 75% requirement, the trial court did not err in concluding that the Commission was estopped from denying Counceller's application.

## II. Abdication

[13]     Counceller also argues that the Commission impermissibly abdicated its authority to approve or disapprove of plats within Columbus to his neighbors. Counceller maintains that Section 225 is an impermissible "neighborhood veto" ordinance that grants unrestricted power to his neighbors to withhold their consent to his resubdivision, even for selfish, arbitrary, or discriminatory reasons. Counceller is correct that such provisions have been held to be unconstitutional. *See, e.g.*, *State of Washington ex rel. Seattle Title Trust Co. v. Roberge*, 49 S. Ct. 50, 52 (1928) ("The section purports to give the owners of less than one-half the land within 400 feet of the proposed building authority— uncontrolled by any standard or rule prescribed by legislative action-to prevent the trustee from using its land for the proposed home. The superintendent is bound by the decision or inaction of such owners. There is no provision for review under the ordinance; their failure to give consent is final. They are not bound by any official duty, but are free to withhold consent for selfish reasons or arbitrarily and may subject the trustee to their will or caprice. The delegation

of power so attempted is repugnant to the due process clause of the Fourteenth Amendment.") (citation omitted).

[14] Section 225 is easily distinguished from provisions such as that at issue in *Roberge*. Section 225 does not give unrestricted power to Counceller's neighbors, in that it provides an applicant with a means to obtain a waiver to the 75% requirement. Subsection D of Section 225 provides as follows:

> Waiver. A property owner may request a waiver from the requirements of Subsection B. The Commission may waive the requirement for the consent of 75% of the property owners in the subdivision if it finds that the proposed change will not have a significant impact on the existing subdivision. The Commission, after receiving an application for resubdivision that includes an express request for waiver, shall consider the request after a public hearing. Notice of the hearing shall be given to interested parties as defined in the Rules of Procedure.

[15] So long as a person seeking to resubdivide can establish to the Commission's satisfaction that the proposed change will not have a significant impact on the subdivision, a waiver may be obtained, thus taking the neighbors completely out of the equation. Section 225 did not confer unrestricted power to Counceller's neighbors.

[16] While Counceller acknowledges the waiver provision, he argues that he had "zero opportunity to request a waiver" pursuant to Subsection 225(D). Appellant's Br. p. 39. The record does not support this contention. As previously mentioned, Counceller is charged with knowledge of the ordinances that affect the Lot, *see Story Bed & Breakfast*, 819 N.E.2d at 64, and Subsection

225(D) specifically contemplates that a waiver request be submitted with the resubdivision application. Counceller, however, did not request a waiver with his application. Additionally, Counceller had many other reasonable opportunities to request a waiver, even if one assumes that he was unaware initially that he could do so. Counceller does not deny that he received notice of his neighbors' appeal, which was filed on May 30, 2014, over one month before the Commission meeting at which the appeal was heard. The appeal identifies its basis as the failure of Counceller to obtain the consent of 75% of property owners in Indian Hills Estates and contains the waiver language of Subsection D. Despite this notice, Counceller did not request a waiver prior to or during the hearing on the appeal. A more reasonable interpretation of the record is that, for whatever reason, Counceller chose not to request a waiver, which is not the same thing as being denied the opportunity. We conclude that Section 225 does not impermissibly abdicate the Commission's authority to Counceller's neighbors.

[17] The judgment of the trial court is affirmed.

May, J., and Crone, J., concur.