

FILED

Jan 30 2020, 8:43 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Michael Rouker
Larry D. Allen
Bloomington, Indiana


ATTORNEYS FOR AMICUS CURIAE
James L. Whitlatch
Kathryn DeWeese
Bunger & Robertson
Bloomington, Indiana

ATTORNEYS FOR APPELLEE

Kendra G. Gjerdingen
Garry L. Founds
D. Michael Allen
Daniel A. Dixon
Mallor Grodner LLP
Bloomington, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

City of Bloomington Board of
Zoning Appeals,

*Appellant,*

v.

UJ-Eighty Corporation,

*Appellee.*

January 30, 2020

Court of Appeals Case No.
19A-PL-457

Appeal from the Monroe Circuit
Court

The Honorable Frank M. Nardi,
Special Judge

Trial Court Cause No.
53C06-1806-PL-1240

**Pyle, Judge.**

# Statement of the Case

[1] This appeal involves a city ordinance that was found unconstitutional as an unlawful delegation of governmental authority. Bloomington ("the City") enacted a Unified Development Ordinance ("the Ordinance") that contained the definition of a fraternity or sorority house and required students to be enrolled in Indiana University and sanctioned by the university, through whatever process the university chose, as members of a fraternity or sorority.

[2] In August 2016, UJ-Eighty Corporation ("UJ-Eighty"), the owner of real estate ("the Property") located in the City, entered into a lease with the Gamma-Kappa Chapter of Tau Kappa Epsilon ("TKE"). At the time, TKE was a sanctioned fraternity with Indiana University. In February 2018, the members of TKE were notified that they could no longer reside at the Property because the university no longer sanctioned TKE. Most of the residents moved out, but two individuals continued to reside at the Property.

[3] Following the loss of TKE's status as a sanctioned fraternity, the City determined that the Property no longer met the Ordinance definition of a "Fraternity/Sorority House" and issued two notices of violation ("NOV") to UJ-Eighty. UJ-Eighty appealed the issuance of the NOVs before the Bloomington Board of Zoning Appeals ("BZA"). The BZA affirmed the issuance of the NOVs. UJ-Eighty then sought judicial review of the BZA's

decision. The trial court granted UJ-Eighty's petition, finding that the City had improperly delegated authority to Indiana University to determine whether the Property was being used by students in a sanctioned fraternity and that the Ordinance was unconstitutional under the Due Process Clause of the Fourteenth Amendment of the United States Constitution and Article 4, § 1 of the Indiana Constitution.

[4] On appeal, the BZA argues that the trial court erred by finding that the City, through the Ordinance, delegated zoning authority to Indiana University in contravention of federal and state constitutions. Concluding that the City improperly delegated authority to Indiana University in violation of the Due Process Clause of the Fourteenth Amendment, we affirm the trial court.[1]

[5] We affirm.

# Issue

Whether the City, through the Ordinance, improperly delegated governmental authority in violation of the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

# Facts[2]

---

[1] Because we hold that the United States Constitution issue is dispositive, we need not address whether the Ordinance violated the Indiana Constitution.

[2] We held oral argument in this cause on October 8, 2019, in the Court of Appeals courtroom in Indianapolis, Indiana. We thank counsel for their excellent oral advocacy in this matter.

[6]     In 2002, UJ-Eighty purchased real estate in Bloomington, Indiana. The Property consists of a house that is in an Institutional zoning district. The City permits twenty-six uses within Institutional zoning districts, of which the following are residential uses: (1) Fraternity/Sorority House; (2) Group Care Home for Developmentally Disabled; (3) Group Care Home for Mentally Ill; (4) Group/Residential Care Home; and (5) University or College. Bloomington Mun. Code § 20.02.500. Residential occupancy outside of the five uses is not permitted in an Institutional zoning district. At the time UJ-Eighty purchased the Property, a "Fraternity/Sorority House" was defined as follows:

> A building or portion thereof used for sleeping accommodations, with or without accessory common rooms and cooking and eating facilities, for groups of unmarried students in attendance at an educational institution. Shall also include any building or portion thereof in which individual rooms or apartments are leased to individuals, but occupancy is limited to members of a specific fraternity or sorority, regardless of the ownership of the building or the means by which occupancy is so limited.

Bloomington Mun. Code § 20.02 (as adopted and effective May 1, 1995).

[7]     Thereafter, in 2015, the Bloomington City Council amended the definition of "Fraternity/Sorority House" contained in the Ordinance at issue in this appeal to mean the following:

> A building or portion thereof used for sleeping accommodations, with or without accessory common rooms and cooking and eating facilities, for groups of unmarried students who meet the following requirements: *all students living in the building are enrolled at Indiana University, Bloomington Campus; and Indiana University has sanctioned or recognized the students living in the building as being members of a*

*fraternity or sorority through whatever procedures Indiana University uses to render such a sanction or recognition.* Shall also include a building or portion thereof in which individual rooms or apartments are leased to individuals, but occupancy is limited to members of a specific fraternity or sorority, regardless of the ownership of the building or the means by which occupancy is so limited, *provided the two requirements noted in the first sentence of this definition are also met*.

Bloomington Mun. Code § 20.11.020. (emphases added).

[8]     In August 2016, UJ-Eighty leased the Property to TKE for a term from August 2016 through May 2019.[3]  In February 2018, the members of TKE were notified that they could no longer reside at the Property because Indiana University no longer recognized or sanctioned the local TKE chapter.  With the assistance of Indiana University, most of the residents moved out and secured other housing.  However, two individuals continued to reside at the Property.

[9]     Thereafter, the City received information that the two individuals had not vacated the Property.  The City mailed a NOV of the Ordinance to UJ-Eighty on February 22, 2018.  This NOV alleged that the Property was being used by two individuals as a dwelling in an "Institutional zoning district which does not permit dwelling of any type, as per the Bloomington Municipal Code's Unified Development Ordinance (UDO) Section 20.02.500 Institutional Permitted Uses.  As of February 18, 2018, [the Property] no longer meets the [Ordinance]

---

[3] The lease agreement was not included in the appendix.

definition of a 'fraternity,' a permitted use in Institutional zoning districts."
(App. 15).

[10] Shortly thereafter, on February 28, 2018, the City mailed a second NOV to UJ-Eighty. The NOV made the same basic allegation of non-compliance of the Ordinance as stated in the first NOV. It also included the Ordinance definition of "Fraternity/Sorority House" and stated that two individuals had failed to vacate the Property, resulting in an "illegal land use." (App. 16).

[11] Both NOVs warned that a violation of this nature could result in a two thousand five hundred dollar ($2,500) fine. Further, the NOVs warned that each day a violation was allowed to continue would be considered a separate violation and that subsequent violations were twice the previous fine, up to a maximum daily fine of seven thousand five hundred dollars ($7,500). However, no fines were ever imposed.

[12] UJ-Eighty requested an administrative appeal of the City's issuance of the NOVs. The BZA held a hearing in May 2018. At the hearing, UJ-Eighty argued that the Ordinance allowed an unconstitutional delegation of power to Indiana University in violation of the 14th Amendment to the U.S. Constitution and Article 4, § 1 of the Indiana Constitution. When arguing against the unconstitutionality of the Ordinance, the City confirmed that its application and enforcement of the Ordinance was contingent upon Indiana University's determination. The City argued that the Ordinance meant that "once Indiana University no longer sanctioned or recognized the fraternity occupying the

petitioner's location, the use 'fraternity/sorority house' could no longer be applied to use by those occupants." (App. 38). The City further asserted that "it is reasonable to define the term according to whether the university acknowledges that the occupants are a sanctioned fraternity/sorority." (App. 38). On June 13, 2018, the BZA affirmed the issuance of the NOVs and denied UJ-Eighty's appeal. UJ-Eighty then petitioned for judicial review of the BZA decision, raising the same constitutional arguments. The trial court granted the petition and entered its order in February 2019. It found that the City had unlawfully delegated governmental authority to Indiana University in violation of the Indiana Constitution and the U.S. Constitution. Specifically, the trial court found that the City's actions were:

> contrary to law and violate[d] the Constitution of Indiana. As argued by [UJ-Eighty], Article 4[,] Section 1 of the Indiana Constitution delegates the legislative authority to the General Assembly and the General Assembly has delegated planning and zoning powers to municipalities and their respective plan commissions and boards of zoning appeals. The [City] has improperly delegated the authority to Indiana University to unilaterally define what constitutes a fraternity or sorority under the [City's] [Ordinance].

> The court also finds . . . that the [City's] actions also constitute an unlawful delegation of governmental authority in violation of the due process clause of the Fourteenth Amendment of the United States Constitution. As argued by [UJ-Eighty], the [City's] definition allows Indiana University to unilaterally determine how [UJ-Eighty] may use its property and both the [City] and [UJ-Eighty] are bound by that determination. The [City's] Ordinance does not provide a standard to control the University's decision, nor does it provide [UJ-Eighty] with a right to a review of the University's decision. Under the definition, the University can make the decision to recognize or sanction a fraternity under whatever procedures that it chooses, without restriction. This type

of delegation of authority has been found to be unconstitutional as found by the Supreme Court of the United States in *State of Washington ex rel. Seattle Trust Co. v. Roberge*, 278 U.S. 116 (1928). More recently the Indiana Court of Appeals in *Counceller v. City of Columbus Plan Comm'n*, 42 N.E.3d 146 (Ind. Ct. App. 2015) cited the *Roberge* case and acknowledged that zoning ordinances which grant unrestricted power to neighbors to withhold consent for a particular property use are unconstitutional. The [City's] definition of fraternities gives Indiana University the unrestricted power to determine [UJ-Eighty's] use of its property without providing any mechanism for reviewing and overruling the University's decision, and for this reason is unconstitutional and not in accordance with law.

The Court now grants the Petition for Judicial Review, strikes down the definition of "Fraternity/Sorority House" as defined by the Bloomington Unified Development Ordinance as unlawful, sets aside the decision of the Board of Zoning Appeals, and Orders the Board of Zoning Appeals to dismiss and vacate the Notices of Violation issued against [UJ-Eighty].

(App. 201-2) (italics added). The BZA now appeals.[4]

# Decision

On appeal, the BZA argues that the City's Ordinance does not "violate the due process clause of the Fourteenth Amendment to the United States Constitution." (BZA's Br. 13). Specifically, the BZA argues that the Ordinance "simply defines fraternities and sororities as what they are—entities affiliated with universities." (BZA's Br. 15). For its part, UJ-Eighty argues that the City

---

[4] After the parties submitted their appellate briefs, UJ-Eighty moved to strike portions of the amicus brief filed by Indiana University in support of the BZA, and Indiana University filed a response thereto. We grant UJ-Eighty's motion to strike in an order filed contemporaneously with this opinion.

delegates to "Indiana University alone the authority to determine how UJ-Eighty Corporation may use the Property without providing a standard by which the City can control the University's decision and without providing UJ-Eighty with the right to have the University's decision reviewed." (UJ-Eighty's Br. 22).

[14] "The ultimate purpose of zoning ordinances is to confine certain classes of uses and structures to designated areas." *Ragucci v. Metro. Dev. Comm'n of Marion Cty.*, 702 N.E.2d 677, 679 (Ind. 1998). Zoning is essentially a legislative act. *Board of Comm'rs of Cty. of Vanderburgh v. Three I Properties*, 787 N.E.2d 967, 976 (Ind. Ct. App. 2003). However, a county, municipality, or other unit of local government is not authorized to engage in the zoning process unless our General Assembly has delegated this authority to them. *See* IND. CODE § 36-7-4-601 *et seq.*; I.C. § 36-1-2-23; *Green v. Hancock Cty. Bd. Of Zoning Appeals*, 851 N.E.2d 962, 965-966 (Ind. Ct. App. 2006). As a result, Indiana statutes give counties, municipalities, and other units of local government the power to plan for and regulate the use, development, improvement, location, condition, and maintenance of real property and buildings or structures on it for the purpose of promoting the health, safety, morals, or general welfare of a community. *Evansville Outdoor Advert., Inc. v. Bd. Of Zoning Appeals of Evansville and Vanderburgh Cty.*, 757 N.E.2d 151, 160 (Ind. Ct. App. 2001), *reh'g denied*, *trans. denied*. Despite this power, a political subdivision of this state exercising zoning authority must also do so within applicable constitutional limitations. *Dvorak v. City of Bloomington*, 702 N.E.2d 1121, 1124 (Ind. Ct. App. 1998).

[15] "When we review a constitutional challenge to a municipal ordinance, we consider the ordinance to stand on the same footing as an act of the legislature." *Id.* In fact, the ordinance is presumed to be constitutional. *Id.* Upon appellate review, "we accord the ordinance every reasonable presumption supporting its validity and place the burden upon the party challenging it to show unconstitutionality." *Id.* An ordinance will not be declared unconstitutional merely because this court might consider it unwise, undesirable, or ineffective; the constitutional defects must be clearly apparent. *Id.*

[16] In addition, INDIANA CODE § 36-7-4-1614(d), provides that a reviewing court should grant relief only if the court determines that a person seeking judicial relief has been prejudiced by a zoning decision that is:

> (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
>
> (2) contrary to constitutional right, power, privilege, or immunity;
>
> (3) in excess of statutory jurisdiction, authority or limitations, or short of statutory right;
>
> (4) without observance of procedure required by law; or
>
> (5) unsupported by substantial evidence.

"The burden of demonstrating the invalidity of a zoning decision is on the party to the judicial review proceeding asserting invalidity." I.C. § 36-7-4-1614(a). When we review the BZA's actions, we apply the same standard as the trial court. *St. Charles Tower, Inc. v. Bd. of Zoning Appeals of Evansville-Vanderburgh Cty.*, 873 N.E.2d 598, 600 (Ind. 2007). "A proceeding before a trial court or an appellate court is not a trial de novo; neither court may substitute its own judgment for or reweigh the evidentiary findings of an administrative agency."

*Id*. We may not reverse the BZA's decision "unless an error of law is demonstrated." *Schlehuser v. City of Seymour*, 674 N.E.2d 1009, 1013 (Ind. Ct. App. 1996).

[17] However, a review of the interpretation of a zoning ordinance is a question of law. *Story Bed & Breakfast, LLP v. Brown Cty. Area Plan Comm'n*, 819 N.E.2d 55, 65 (Ind. 2004). The ordinary rules of statutory construction apply in interpreting the language of a zoning ordinance. *Id*. Generally, we review questions of law decided by an agency de novo. *Huffman v. Office of Envtl. Adjudication*, 811 N.E.2d 806, 809 (Ind. 2004).

[18] The federal constitutional issue here arose during judicial review of the BZA's decision against UJ-Eighty. There, the trial court determined that the City had, through the Ordinance, violated the Due Process Clause of the Fourteenth Amendment because the City had unlawfully delegated governmental authority to Indiana University without "provid[ing] a standard to control the University's decision, nor d[id] it provide [UJ-Eighty] with a right to a review of the University's decision." (App. 201). Here, the BZA argues that the trial court erred and that its determination that there was no constitutional violation was correct. UJ-Eighty argues that the City's delegation of governmental authority to Indiana University violated its due process rights because the Ordinance fails to set forth standards or relevant considerations to guide Indiana University. We agree with UJ-Eighty.

[19]  The Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. 14, § 1. It guarantees both procedural *and* substantive due process rights. *McIntosh v. Melroe Co.,* 729 N.E.2d 972, 975 (Ind. 2000). Substantive due process "bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (quotation and citation omitted). In setting forth a claim for violation of substantive due process, a party must show either that the law infringes upon a fundamental right or liberties deeply rooted in our nation's history or that the law does not bear a substantial relation to permissible state objectives. *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997); *Moore v. City of East Cleveland*, 431 U.S. 494, 499 (1977). Concerning procedural due process protections, the United States Supreme Court has explained that:

> identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

[20]  Below, the trial court found that the City had contravened the guarantees of due process by effectuating an improper delegation of legislative authority to Indiana University. In so holding, the trial court relied on the case of

*Washington ex rel. Seattle Title Trust Co. v. Roberge*, 278 U.S. 116 (1928). The BZA disputes the applicability of *Roberge* to the facts of the instant case. Conversely, UJ-Eighty asserts that when the City gave Indiana University authority over the ability of private landowners to use their property in a particular manner, it engaged in the same delegation of power held repugnant in *Roberge*.

[21] In *Roberge*, the Supreme Court considered a Seattle ordinance that permitted the construction of a home for the elderly poor in a particular district only if two-thirds of the property owners within 400 feet of the proposed building site gave written consent. After acknowledging "the right of the [landowner] to devote its land to any legitimate use is property within the protection of the Constitution," the *Roberge* Court struck down the ordinance. *Id*. at 121. The *Roberge* Court noted that the ordinance made the construction subject to the approval of third-party property owners "uncontrolled by any standard or rule prescribed by legislative action . . . ." *Id*. at 121–22. In addition to not being controlled by any standard or rule prescribed by legislative action, the ordinance made "no provision for review," and left the city and the plaintiff "bound by the decision or inaction" of the property owners. *Id*. at 122. The property owners were "free to withhold consent for selfish reasons or arbitrarily," and made the plaintiffs subject to their "will or caprice." *Id*. The *Roberge* Court held that Seattle's "delegation of power" to third-party property owners was "repugnant to the due process clause of the Fourteenth Amendment." *Id.*

Turning to the facts of this case, we are dealing with a similar abrogation of zoning responsibility "uncontrolled by any standard or rule prescribed by legislative action." *Id*. at 122. The City, via its Ordinance, delegated to Indiana University the authority to decide whether a group of people will be recognized or sanctioned as members of a fraternity or sorority for purposes of determining whether a property owner complies with the Ordinance. Put differently, the City delegated its legislative authority to Indiana University to determine whether the Property was being used by students in a sanctioned fraternity.

Moreover, the City provided no mechanism for reviewing Indiana University's decision. The Ordinance states that Indiana University may sanction or recognize the students as being members of a fraternity or sorority "through *whatever procedures* Indiana University uses to render such a sanction or recognition." Bloomington Mun. Code. § 20.11.020. (emphasis added). Indeed, in *Counceller*, the other case relied upon by the trial court, a panel of this Court determined that ordinances abdicating planning authority without restriction are unconstitutional. *See Counceller v. City of Columbus Plan Comm'n*, 42 N.E.3d 146, 150-51 (Ind. Ct. App. 2015), *trans. denied*. In that case, an ordinance required 75% of property owners in a subdivision to approve further subdivision of a lot within the subdivision. The *Counceller* Court distinguished *Roberge* and held that ordinance was not an improper delegation of authority because the planning commission possessed the power to waive the provision requiring the approval of the property owners. *Id*. at 151. Here, there is no such language. The City has not provided any means for a review of Indiana

University's decision and both the City and property owners are bound by the university's decision.

[24] The BZA argues that the Ordinance was constitutional because Indiana University no longer sanctioned TKE as a fraternity for students attending Indiana University and that accordingly, UJ-Eighty could no longer lease the Property to TKE. In support, the BZA contends that "[c]odifying a requirement for university affiliation is not an impermissible delegation of zoning authority[.]" (BZA's Br. 17). Rather, it "is a commonplace and precise way of describing which organizations qualify as fraternities or sororities." (BZA's Br. 17). The BZA's justifications for this delegation of authority are unavailing. The Ordinance went beyond defining fraternities or sororities as "entities affiliated with universities." (BZA's Br. 15). The City gave the force of law to a determination by Indiana University, an entity other than "a board of zoning appeals" with "territorial jurisdiction over all land subject to the zoning ordinance[.]" *See* I.C. § 36-7-4-901(e).

[25] Additionally, it should be noted that the amendment to the Ordinance is also clearly arbitrary and unreasonable; the amendment created a situation where the University was allowed to act, but UJ-Eighty would be punished. It is undisputed that UJ-Eighty took no affirmative action to violate the Ordinance. At oral argument, Counsel for the Appellant was asked to identify *any* affirmative action taken by UJ-Eighty to violate the Ordinance; he had no answer. UJ-Eighty had properly leased its property to a fraternal organization. *See Bromley v. McCaughn*, 280 U.S. 124, 140 (1929) (Sutherland, J., dissenting)

(the right to give property is as old as the right to use or possess property). It took no action to otherwise violate the ordinance. It was the University's action (removing TKE from the list of sanctioned fraternities) which triggered the ordinance violation that the City sought to enforce against UJ-Eighty. As a result, allowing a third party to engage in actions, following *whatever procedures* it deems necessary, that trigger zoning violations against a property owner arbitrarily and unreasonably deprives the property owner of its due process rights under the Fourteenth Amendment. *See Roberge*, 278 U.S. 116.

[26] Accordingly, we hold that the City, via its Ordinance, impermissibly delegated to Indiana University the authority to decide whether a group of people will be recognized or sanctioned as members of a fraternity or sorority for purposes of determining whether a property owner complies with the Ordinance, in violation of the Fourteenth Amendment. Therefore, we affirm the judgment of the trial court setting aside the BZA's decision to uphold the issuance of the NOVs as unconstitutional and not in accordance with law.

[27] Affirmed.


Robb, J., concurs.

Bailey, J., dissents with separate opinion.

| City of Bloomington Board of Zoning Appeals, <br><br> *Appellant,* <br><br> v. <br><br> UJ-Eighty Corporation, <br><br> *Appellee.* | Court of Appeals Case No. 19A-PL-457 |
| --- | --- |

**Bailey, Judge, dissenting.**

[28] The trial court declared the Ordinance facially invalid and struck down the definition of fraternity house in the Ordinance. The majority affirms this decision. Yet, there is a presumption in favor of constitutionality. *Whistle Stop Inn, Inc. v. City of Indianapolis*, 51 N.E.3d 195, 199 (Ind. 2016). Indeed, the Ordinance "stands before this Court clothed with the presumption of constitutionality until clearly overcome by a contrary showing." *Id.* (quoting *Paul Stieler Enters., Inc. v. City of Evansville*, 2 N.E.3d 1269, 1273 (Ind. 2014)).

Ultimately, to declare a law facially invalid, the challenger—in this case, UJ-Eighty—must have met the "heavy burden" of demonstrating there is "no set of circumstances under which the [law] can be constitutionally applied." *Meredith v. Pence*, 984 N.E.2d 1213, 1218 (Ind. 2013) (quoting *Baldwin v. Reagan*, 715 N.E.2d 332, 337 (Ind. 1999)). The majority strikes down the definition, concluding that UJ-Eighty met this considerable burden. I must disagree.

[29] The majority declares the law facially invalid for failing to provide due process guaranteed by the Fourteenth Amendment to the U.S. Constitution. There are two types of due process: substantive due process and procedural due process.

## Substantive Due Process

[30] In the context of zoning ordinances, substantive due process requires that a zoning ordinance bear a "rational relationship to permissible state objectives." *Moore v. City of E. Cleveland, Ohio*, 431 U.S. 494, 498 (1977) (citing *Vill. of Euclid, Ohio v. Ambler Realty Co.*, 272 U.S. 365 (1926)). Here, the Ordinance—which regulates housing for university students—rationally relates to the permissible objective of protecting students. Thus, the Ordinance satisfies the requirements of substantive due process. To the extent the majority characterizes the Ordinance as "clearly arbitrary and unreasonable" because "UJ-Eighty took no affirmative action to violate the Ordinance," *supra* at 15, this case arose because UJ-Eighty chose to rent its property. Its tenants did not satisfy the definition in the Ordinance—and I discern nothing arbitrary or unreasonable about holding a landlord accountable for ensuring use of its property complies with the law.

# Procedural Due Process

Turning to procedural due process, to determine what process is generally due under the Fourteenth Amendment, courts must consider the *Eldridge* factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Notably, the U.S. Supreme Court has explained that due process "does not require that 'the procedures used to guard against an erroneous deprivation . . . be so comprehensive as to preclude any possibility of error.'" *Walters v. Nat'l Ass'n of Radiation Survivors*, 473 U.S. 305, 320 (1985) (alteration in original) (quoting *Mackey v. Montrym*, 443 U.S. 1, 13 (1979)). Moreover, the Court has "emphasized that the marginal gains from affording an additional procedural safeguard often may be outweighed by the societal cost of providing such a safeguard." *Id.* at 321.

# Delegation

Before discussing the *Eldridge* factors, I will note that the majority focuses on the concept of delegation, ultimately holding "that the City improperly delegated authority to Indiana University in violation of the Due Process Clause of the Fourteenth Amendment." *Supra* at 3. Yet, in general, the U.S.

Constitution is not concerned with how a state goes about delegating powers reserved to it. Rather, whether and how there may be a delegation of state power is a question of state law. *See Ind. Dep't of Nat. Res. v. Newton Cty.*, 802 N.E.2d 430, 432-35. Instead, the Fourteenth Amendment is concerned with whether the Ordinance provides adequate procedural protections. The purpose of these procedures is to safeguard against **an erroneous deprivation**, not to second-guess the channels of state authority. *See Walters,* 473 U.S. at 321 ("Procedural due process rules are shaped by the risk of error inherent in the truth-finding process . . . ." (quoting *Eldridge*, 424 U.S. at 344)). Indeed, the touchstone of procedural due process is whether the process leading to the deprivation of a protected interest is fundamentally fair. *See id.* at 320-21.[5]

[33] In any case, there was no delegation here. The City enacted the Ordinance, which sets forth a discernible definition for a fraternity house. The definition

---

[5] To the extent the majority reads *State of Washington ex rel. Seattle Title Tr. Co. v. Roberge*, 278 U.S. 116 (1928), as commenting on delegation, that case is ultimately about **arbitrary** government action—not procedural due process. Thus, *Roberge* is germane to discussions about substantive due process, not the instant discussion. *See Roberge*, 278 U.S. at 122-23. Indeed, *Roberge* involved an ordinance that permitted lodging as many as sixty people, and was amended to specify that "[a] philanthropic home for children or for old people shall be permitted . . . when the written consent shall have been obtained of the owners of two-thirds of the property within four hundred (400) feet of the proposed building." 278 U.S. at 118. The Court expressed concern that, on the one hand, the legislative body had "grant[ed] . . . permission for such building and use" while, on the other hand, the grant of permission "purport[ed] to be subject to [neighbor] consents." *Id.* The Court determined that the structure of the ordinance "shows that the legislative body found that the construction and maintenance of the new home was in harmony with the public interest and with the general scope and plan of the zoning ordinance." *Id.* In rejecting the ordinance, the Court did not disapprove of the neighbor-consent provision contained in the ordinance. *See id.* at 122 (discussing, distinguishing, and implicitly endorsing *Thomas Cusack Co. v. City of Chicago*, 242 U.S. 526 (1917), which upheld a neighbor-consent provision). Rather, the Court held that the neighbor-consent provision was unrelated to the police power, therefore, the provision was "arbitrary and repugnant to the due process clause." *Id.* at 123. In other words, the constitutional defect was not that the ordinance contained a neighbor-consent provision. Instead, the defect was that the provision did not rationally relate to a permissible state objective. *See id.* at 121-23.

turns on whether Indiana University sanctioned the fraternity—a measurable standard. I therefore disagree with the majority's conclusion that the City delegated power to Indiana University "to determine whether the Property was being used by students in a sanctioned fraternity." *Supra* at 14. To the contrary, the City enacted the Ordinance—and the City decides whether use of the property complies with the Ordinance. Ultimately, there was no delegation. Moreover, there is no dispute that procedures are in place allowing a landlord like UJ-Eighty to challenge the City's determination of non-compliance.

## *Eldridge* Factors

[34] The majority identifies procedures that the Ordinance could have included— and it strikes down the Ordinance because of a lack of those procedures. Specifically, the majority concludes that the Ordinance should have "set forth standards or relevant considerations to guide Indiana University." *Supra* at 11. The majority also concludes that the Ordinance should have included a "mechanism for reviewing Indiana University's [sanctioning] decision." *Id.* at 14. The majority draws these procedures from *dicta* in *Roberge*, a 1928 decision handed down long before the U.S. Supreme Court adopted the *Eldridge* factors.

[35] Although the majority identifies additional procedures, it does not apply all of the *Eldridge* factors. Indeed, the majority does not weigh the effectiveness of the additional procedures against the societal cost. *See Eldridge*, 424 U.S. at 335. Adhering to *Eldridge*, I would conclude that the proffered additional procedures

are not constitutionally required because they lack value—and any marginal gain would not outweigh the societal cost. *See Walters*, 473 U.S. 305 at 320-21.

## Standards to Guide Indiana University

[36] As to including "standards or relevant considerations to guide Indiana University," supra at 11, Indiana University is a state educational institution, I.C. § 21-20-2-1. As such, it is bound to follow the U.S. Constitution and Indiana Constitution. UJ-Eighty failed to demonstrate how standards set by the City—as opposed to those adopted by Indiana University in view of its constitutional obligations—would better protect against erroneous deprivation.

## Review Procedure

[37] As to a "mechanism for reviewing Indiana University's decision," supra at 14, this procedure would burden the City—requiring the expenditure of public resources on matters another arm of government already addressed. Further, although UJ-Eighty challenges only the portion of the Ordinance related to whether IU sanctioned the fraternity, the Ordinance also ties the definition of a fraternity house to whether all residents are "enrolled at the Indiana University Bloomington campus." Bloomington Mun. Code § 20.11.020. Thus, applying the logic UJ-Eighty advances—and the majority adopts—the City must also undertake the considerable burden of reviewing Indiana University enrollment decisions. I cannot say that due process demands such a heavy societal cost.

[38] The majority also focuses on language in the Ordinance permitting Indiana University to use "**whatever procedures** Indiana University uses" to sanction a

fraternity. *Id.* (emphasis added). The majority suggests that this open-ended procedural language invites Indiana University to make unfair sanctioning decisions—decisions that, in turn, unfairly affect a landlord like UJ-Eighty. However, the language must not be read out of context. Again, as a state university, Indiana University is bound to comply with the state and federal constitutions. I cannot say UJ-Eighty has demonstrated that the challenged language—read in context—creates a high risk of an erroneous deprivation.

[39] Ultimately, due process requires procedures that are fundamentally fair. Walters, 473 U.S. at 320. Under the unique circumstances of this case— involving the interrelationship of independent arms of government that are protecting students in a university town—I would conclude UJ-Eighty failed to demonstrate that the Ordinance and its attendant procedures are deficient.

[40] For these reasons, I respectfully dissent.